# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **MICHAEL TEAGUE,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **Case No. 1:23-CV-01053-DII** |
| | § | |
| **TRAVIS COUNTY EMERGENCY** | § | |
| **SERVICES DISTRICT 8 and** | § | |
| **TROY WENZEL,** | § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE DISTRICT COURT**

Before the Court are Defendant Wenzel's Motion to Dismiss, or in the Alternative, Motion for Rule 7(a) Reply, filed December 7, 2023 (Dkt. 11); Travis County Emergency District 8's Motion to Dismiss Plaintiff's Amended Complaint, filed December 8, 2023 (Dkt. 13); and the associated response and reply briefs. By Text Orders issued January 23, 2024, the District Court referred the motions to this Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I.    Background

Plaintiff Michael Teague brings this First Amendment retaliation suit against his former employer, Travis County Emergency Services District 8 ("ESD 8"), and former ESD 8 Fire Chief Troy Wenzel. Amended Complaint, Dkt. 10. ESD 8, also known as the Pedernales Fire Department, is one of fourteen Emergency Services Districts in Travis County, Texas. *Id.* ¶ 14.[1]

---

[1] ESD 8 is a "political subdivision" of the State of Texas governed by a five-member Board of Commissioners appointed by the Travis County Commissioner's Court. Dkt. 10 ¶ 9; Tex. Health & Safety Code § 775.031(a).

Teague worked as a full-time fire fighter for ESD 8 from October 2020 through March 2023, and Wenzel was the Fire Chief of ESD 8 during his employment. *Id.* ¶¶ 3, 22. Teague alleges that ESD 8's Fire Chief is "primarily responsible for managing the day-to-day operations of ESD 8, which includes making decisions on hiring and firing personnel, promotions, suspensions, creating and enforcing workplace rules for ESD 8 employees, and anything else which might impact the terms and conditions of a fire fighter's employment with ESD 8." *Id.* ¶ 17.

Teague alleges that throughout his employment with ESD 8, he "performed the essential duties of his job, and he performed them well." *Id.* ¶ 23. Teague was elected president of the local chapter of the International Association of Fire Fighters ("IAFF") union, Local 4820, in October 2022 and held that position through March 2023. *Id.* ¶ 24. During his tenure, Teague "advocate[d] on a variety of matters of public concern which were affecting ESD 8 fire fighters," including:

a. The need for better firefighting equipment that complied with National Fire Protection Association standards;

b. Lack of personal protective equipment ("PPE") to perform hazardous work;

c. Pay raises for ESD 8 fire fighters to ensure that they were paid at similar levels to other fire fighters in the region;

d. Wasteful spending by ESD 8 on boats and cars that ESD 8 fire fighters did not need to perform their jobs; and

e. Failure of ESD 8 to spend the budget they were allocated to help fire fighters perform their jobs.

*Id.* Teague alleges that he spoke about these matters "because they impaired public safety and were preventing ESD 8, and its employees who were represented by IAFF Local 4820, from protecting the Pedernales community." *Id.* ¶ 25. He spoke up repeatedly and in various settings, "including public meetings with the Board of Commissioners, public gatherings within the Pedernales community, and during conversations with members of the Pedernales community." *Id.* ¶ 26. During these interactions, Teague alleges, he "was not speaking about matters of public concern as an employee of ESD 8, but as a private citizen and/or President of IAFF Local 4820." *Id.*

Teague alleges that each time he spoke up and advocated for ESD 8 fire fighters, "he was chastised, warned, and/or threatened by Defendants." *Id.* ¶ 2. He asserts that Defendants retaliated against him by (1) prohibiting him access to the Board of Commissioners; (2) threatening him with discipline if he continued to speak with the Board of Commissioners about the administration of the fire department; (3) placing him on administrative leave based on false allegations of sexual harassment; and (3) terminating his employment. *Id.* ¶¶ 34-36. Teague alleges ESD 8 stated in a March 20, 2023 letter that his employment was terminated because he "falsified" his job application by failing to list his employment with the Austin Fire Department. *Id.* ¶ 36. Teague alleges that the stated reason was pretextual, while "the real reason for his termination was his speech and advocacy over matters of public concern." *Id.* ¶ 5. Teague also alleges that his termination is "the latest in a widespread pattern and practice of behavior by Defendants in which past members of IAFF Local 4820 who have spoken up about matters of public concern have been targeted, harassed, and driven from their jobs by Defendants." *Id.* ¶ 6.

Teague brings First Amendment retaliation claims under 42 U.S.C. § 1983 against ESD 8 and Wenzel in his individual and official capacities as former Fire Chief. He alleges that Defendants terminated his employment in retaliation for exercising his free speech, association, and petition rights under the First Amendment to the United States Constitution. Teague also asserts a right to freedom of association claim under the Texas Labor Code against Wenzel. He seeks declaratory and injunctive relief, monetary damages, and attorneys' fees.

ESD 8 moves to dismiss Teague's claims for failure to state a claim under Rule 12(b)(6). Wenzel moves to dismiss under Rules 12(b)(1) and 12(b)(6) based on governmental immunity, qualified immunity, redundancy, and failure to state a plausible claim for relief.

## II.    Rule 12(b)(6)

Rule 12(b)(6) allows a party to move to dismiss a claim for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "A motion to dismiss for failure to state a claim is not meant to resolve disputed facts or test the merits of a lawsuit. It instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. A complaint "does not need detailed factual allegations," but the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*

In evaluating motions to dismiss filed under Rule 12(b)(6), the Court must accept all well-pleaded facts as true, and view them in the light most favorable to the plaintiff. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). Moreover, "all questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor." *Id.* "[T]he court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence to support his claims. The other side

will have its say later." *Sewell*, 974 F.3d at 581 (cleaned up). Ultimately, the burden is on the moving party to prove that no legally cognizable claim for relief exists. 5B ARTHUR R. MILLER, FED. PRAC. & PROC. CIV. ("WRIGHT & MILLER") § 1357 (4th ed. Feb. 2024 Update).

### III.   ESD 8's Motion to Dismiss

Teague alleges that ESD 8 violated his rights under the First Amendment to the United States Constitution by retaliating against him for (1) engaging in free speech about matters of public concern, (2) associating with other ESD 8 employees and IAFF Local 4820 members, and (3) petitioning his government for the redress of his grievances. ESD 8 argues that Teague's allegations are "vague and conclusory" and do not state a plausible claim for relief under 42 U.S.C. § 1983. Dkt. 13 at 2.

### A.  First Amendment Standards

The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits enactment of laws "abridging the freedom of speech." U.S. CONST. amend. I; *see also Edwards v. South Carolina*, 372 U.S. 229, 235 (1963) ("It has long been established that the[] First Amendment freedoms are protected by the Fourteenth Amendment from invasion by the States."). "Speech by citizens on matters of public concern lies at the heart of the First Amendment, which 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *Lane v. Franks*, 573 U.S. 228, 235-36 (2014) (quoting *Roth v. United States*, 354 U.S. 476, 484 (1957)).

> This remains true when speech concerns information related to or learned through public employment. After all, public employees do not renounce their citizenship when they accept employment, and this Court has cautioned time and again that public employers may not condition employment on the relinquishment of constitutional rights. There is considerable value, moreover, in encouraging, rather than inhibiting, speech by public employees. For government employees are often in the best position to know what ails the

> agencies for which they work. The interest at stake is as much the public's interest in receiving informed opinion as it is the employee's own right to disseminate it.

*Id.* at 236 (cleaned up).

The Supreme Court also acknowledges "the government's countervailing interest in controlling the operation of its workplaces. Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Id.* (citations omitted). Thus, "while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" *Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006) (quoting *Connick v. Myers*, 461 U.S. 138, 154 (1983)).

In *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty.*, 391 U.S. 563 (1968), the Court laid the framework for analyzing "whether the employee's interest or the government's interest should prevail in cases where the government seeks to curtail the speech of its employees." *Lane*, 573 U.S. at 236. This balancing test requires "balanc[ing] . . . the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568. This is known as the "*Pickering* balancing test." *Bd. of Cnty. Comm'rs, Wabaunsee Cnty., Kan. v. Umbehr*, 518 U.S. 668, 668 (1996). In *Pickering*, the Court struck the balance in favor of the public employee, extending First Amendment protection to a teacher who was fired after writing a letter to the editor of a local newspaper criticizing the school board that employed him. *Id.* at 573.

*Pickering* and its progeny established a two-step inquiry to determine whether a public employee's speech merits protection:

> The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.

*Garcetti*, 547 U.S. at 418 (citations omitted). If employees are speaking as citizens about matters of public concern, "they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Id.* at 419.

There are two predicates for public employee speech to receive First Amendment protection: the speech must be made as a citizen and on a matter of public concern. *Gibson v. Kilpatrick*, 773 F.3d 661, 667 (5th Cir. 2014).

> Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public. The inquiry turns on the content, form, and context of the speech.

*Lane*, 573 U.S. at 241 (cleaned up).

In *Garcetti*, the Court found that a public employee's speech was not protected because his statements were made pursuant to his official duties as a deputy district attorney. 547 U.S. at 422. The public employee, Richard Ceballos, had written a memo to his supervisor conveying his opinion that a criminal case should be dismissed because the affidavit used to obtain a search warrant contained serious misrepresentations. *Id.* at 420. While the Court acknowledged that the First Amendment may protect "expressions made at work" and "some expressions related to the speaker's job," it found that Ceballos "did not speak as a citizen by writing a memo that addressed the proper disposition of a pending criminal case. When he went to work and performed the tasks he was paid to perform, Ceballos acted as a government employee." *Id.* at 422. The Court held that

"when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421.

A few years later, the Supreme Court clarified its holding in *Garcetti* and the "citizen" and "matter of public concern" requirements. *Lane*, 573 U.S. at 237. The *Lane* Court explained that the "critical question" in determining whether a public employee is speaking as a citizen or an employee "is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id.* at 240. The Court held that the fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee speech. *Id.* The Court emphasized that "our precedents dating back to *Pickering* have recognized that speech by public employees on subject matter related to their employment holds special value precisely because those employees gain knowledge of matters of public concern through their employment." *Id.*

In the Fifth Circuit, to state a claim for First Amendment retaliation, a public employee must allege that (1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in speaking outweighed the governmental defendant's interest in the efficient provision of public services; and (4) the speech motivated the adverse employment action. *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 306 n.8 (5th Cir. 2020); *Oscar Renda Contracting, Inc. v. City of Lubbock, Tex.*, 577 F.3d 264, 271 (5th Cir. 2009). Depending on the facts alleged in the complaint, the third element may be inferred from the pleadings or relevant only at the summary judgment stage. *See Burnside v. Kaelin*, 773 F.3d 624, 628 (5th Cir. 2014) ("In stating a prima facie case at the motion-to-dismiss stage of a case, there is a rebuttable presumption that no balancing is required to state a claim.").

**B.  Analysis**

**1.  Free Speech and Petition Claims**

Retaliation claims under both the Speech Clause and the Petition Clause are analyzed in the same way. *Gibson*, 838 F.3d at 481. The Court, like the parties, addresses these claims together.

Teague alleges that ESD 8 retaliated against him by terminating his employment "for engaging as a private citizen in speech about matters of public concern." Dkt. 10 ¶ 46. Teague alleges that in his capacity as President of Local 4820, he raised concerns to the Board of Commissioners, the Fire Chief, and other members of the Pedernales community "about issues concerning the need for better firefighting equipment; the lack of PPE; pay raises for ESD 8 fire fighters; wasteful spending by ESD 8; and the failure of ESD 8 to properly spend the money it allocated to the fire fighters of ESD 8." *Id.* ¶ 47. Teague contends that ESD 8 violated his rights to petition the government by retaliating against him after he sought changes to these policies, practices, and procedures. *Id.* ¶ 68.

ESD 8 argues that Teague's free speech and petition retaliation claims should be dismissed because he does not "sufficiently allege specific facts plausibly demonstrating that he can prove" the elements of his *prima facie* case. Dkt. 13 at 4. But Teague does not have to prove his case at the motion to dismiss stage. *See Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 329 n.18 (5th Cir. 2020) ("At the pleading stage, the plaintiff must allege facts that demonstrate unlawful conduct; at the judgment stage, the plaintiff must show proof of such facts."). Instead, Teague need only plead sufficient facts to state a plausible claim to relief. *Ashcroft*, 556 U.S. at 678. At this stage, "[t]he issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." *Jones*, 188 F.3d at 324; *see also Preston v. Seterus, Inc.*, 931 F. Supp. 2d 743, 751 (N.D. Tex. 2013) ("Whether Plaintiffs have the ultimate burden of proof at trial on any of their claims is irrelevant here because, for purposes of Defendants' Rule 12(b)(6)

motion, Plaintiffs have no burden of proof. Rather, the issue is whether Plaintiffs, based on their pleadings, have stated a claim upon which relief can be granted.").

In support of its argument that Teague has failed to allege a plausible First Amendment retaliation claim, ESD 8 argues that his Amended Complaint "provides no detail regarding what he allegedly said, to whom he said it, where he said it, whether he was on- or off-duty when he made the statement or engaged in petitioning, or the timing of any such speech or petitioning in relation to his discharge." Dkt. 13 at 5. It appears that ESD 8 seeks to hold Teague to Rule 9(b)'s heightened pleading standard applicable to fraud claims, which "requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Other than this conclusory sentence, ESD 8 does not explain how Teague's allegations fail to meet each element of his *prima facie* case. At the motion to dismiss stage, it is the defendant's burden to show it is entitled to dismissal. *Marcure*, 992 F.3d at 631.

The Court looks to Teague's Amended Complaint to determine whether he has stated sufficient facts to state plausible free speech and petition claims. As stated, to allege a plausible prima facie claim of First Amendment retaliation, Teague must allege (1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in speaking outweighed ESD 8's interest in the efficient provision of public services; and (4) the speech motivated the adverse employment action. *Powers*, 951 F.3d at 306 n.8. ESD 8 does not dispute that Teague's termination was an adverse employment action, but does contest elements two through four. Dkt. 13 at 4.

### a.  Element Two

Teague must plead sufficient facts to show that he "spoke as a citizen on a matter of public concern." *Garcetti*, 547 U.S. at 418. Teague alleges that he spoke about matters of public concern "during the October 2022 through March 2023 period in a variety of settings, including public meetings with the Board of Commissioners, public gatherings within the Pedernales community, and during conversations with members of the Pedernales community." Dkt. 10 ¶ 26. Teague alleges that during these interactions, he "was not speaking about matters of public concern as an employee of ESD 8, but as a private citizen and/or President of IAFF Local 4820." *Id.* ESD does not dispute these allegations, but argues that they are insufficiently specific.

The Court finds that Teague states a plausible claim that he spoke as a citizen. *See Johnson v. Halstead*, 916 F.3d 410, 422 (5th Cir. 2019) ("Complaints made publicly or to individuals outside the speaker's organization suggest the employee is acting as a citizen."); *Anderson v. Valdez*, 845 F.3d 580, 600 (5th Cir. 2016) ("[I]t was clearly established that an employee's speech made externally concerning an event that was not within his or her job requirements was entitled to First Amendment protection."); *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008) ("If . . . a public employee takes his job concerns to persons outside the work place in addition to raising them up the chain of command at his workplace, then those external communications are ordinarily not made as an employee, but as a citizen.").

The Court also finds that Teague has sufficiently alleged that he was speaking on matters of public concern. Teague alleges that he repeatedly spoke up in public as Local 4820 President about the need for better firefighting equipment, the lack of PPE, wasteful spending by ESD 8, and the failure of ESD 8 to properly spend money allocated to its fire fighters. Dkt. 10 ¶ 47. Courts have found such matters to be of public concern. *See Lane*, 573 U.S. at 241 ("[C]orruption in a public

program and misuse of state funds—obviously involves a matter of significant concern.");
*Garcetti*, 547 U.S. at 425 ("Exposing governmental inefficiency and misconduct is a matter of
considerable significance"); *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001) ("Speech
which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city
officials . . . concerns matter of public import."); *Moore v. City of Kilgore, Tex.*, 877 F.2d 364,
371-72 (5th Cir. 1989) ("The operation of the city Fire Department certainly is a matter that
concerns interested citizens," as is "the effectiveness of the Fire Department in fighting fires.").
Teague's allegations satisfy the second element of a First Amendment retaliation claim.

### b.  Element Three

The third factor generally requires a court to apply the *Pickering* balancing test, which balances
a plaintiff's First Amendment rights against "the interest of the State, as an employer, in promoting
the efficiency of the public services it performs through its employees." *Rankin v. McPherson*, 483
U.S. 378, 388 (1987) (quoting *Pickering*, 391 U.S. at 568). Pertinent considerations include
"whether the statement impairs discipline by superiors or harmony among co-workers, has a
detrimental impact on close working relationships for which personal loyalty and confidence are
necessary, or impedes the performance of the speaker's duties or interferes with the regular
operation of the enterprise." *Id.*

But at the motion to dismiss stage, there is a rebuttable presumption that no balancing is needed
to state a First Amendment retaliation claim. *Garza v. Escobar*, 972 F.3d 721, 728 (5th Cir. 2020).

> The rebuttable presumption applies because reasonable inferences
> drawn from a complaint, obviously drafted by the aggrieved
> employee, will generally lead to a plausible conclusion that the
> employee's interest in commenting on matters of public concern
> outweighs the employer's interest in workplace efficiency. The
> presumption also adheres because a plaintiff-employee is not in a
> position to plead defensive reasons for its employment decisions.

*Burnside*, 773 F.3d at 628. In *Burnside*, the Fifth Circuit found that the rebuttable presumption applied and plaintiff's allegations were sufficient because "nothing in [plaintiff's] complaint indicates that [plaintiff's] interest in commenting on the election was surpassed by [defendant's] interest in workplace efficiency." *Id.*

As in *Burnside*, nothing in Teague's Amended Complaint indicates that his interest in speaking out on issues related to ESD 8 firefighters was surpassed by ESD 8's interest in workplace efficiency. In fact, ESD 8 does not argue that its interest in workplace efficiency outweighed Teague's interest in speaking out. The Court finds Teague's allegations and inferences drawn from his Amended Complaint satisfy the third element at this stage of the case. *Id.* at 629.

### c.   Element Four

The final element of a First Amendment retaliation claim requires Teague to allege facts showing that his speech motivated his termination. The speech "need only be a motivating factor in the adverse employment action." *Id*. at 624.

Teague alleges that in his role as Local 4820 President, he repeatedly spoke up about matters of public concern affecting ESD 8 fire fighters in public settings from October 2022 through March 2023. Dkt. 10 ¶ 26. He that Defendants were aware of his association with the union and his speech activities. *Id.* ¶ 58. Teague also alleges that he was retaliated against and ultimately terminated for engaging in such speech. *Id.* ¶¶ 34, 36. The Court finds that Teague's allegations and the close timing between his speech activities and his termination are sufficient to show a causal connection at this stage of the proceedings. *See Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019) ("Close timing between an employee's protected activity and an adverse action against him may provide the causal connection required to make out a prima facie retaliation case."); *Burnside,* 773 F.3d at 628 (allegations that employee was transferred three weeks after

engaging in speech activities were sufficient to allow a plausible inference of a causal connection); *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (noting that "a time lapse of up to four months has been found sufficient to satisfy the causal connection").

The Court finds that Teague has alleged sufficient facts to state a plausible *prima facie* case of First Amendment free speech/petition retaliation.

### 2. Freedom of Association Claim

Teague also asserts a freedom of association claim. The First Amendment protects a public employee's right to associate with a union. *Hitt v. Connell*, 301 F.3d 240, 245 (5th Cir. 2002).

> The first amendment protects the right of all persons to associate in groups to further their lawful interests. This right of association encompasses the right of public employees to join unions and the right of their unions to engage in advocacy and to petition government in their behalf. Thus, the first amendment is violated by state action whose purpose is either to intimidate public employees from joining a union or from taking an active part in its affairs or to retaliate against those who do.

*Boddie v. City of Columbus, Miss.*, 989 F.2d 745, 748 (5th Cir. 1993) (quoting *Allee v. Medrano*, 416 U.S. 802, 819 n.13 (1974)). A First Amendment association claim has similar elements to a free speech retaliation claim but requires "engagement in a constitutionally protected activity" rather than speech and does not mandate that the protected act involve a matter of public concern. *Burnside*, 773 F.3d at 626. To state a claim of association retaliation, Teague must allege that (1) he suffered an adverse employment action, (2) his interest in associating with the Union outweighed ESD 8's interest in efficiency, and (3) his protected activity was a motivating factor in the adverse employment action. *Hitt*, 301 F.3d at 246.

Teague alleges that ESD 8 terminated his employment "because of his association with IAFF Local 4820 and for continually advocating about issues which impacted fire fighters of ESD 8 and the Pedernales community." Dkt. 10 ¶ 59. He also alleges that "Defendants were aware of Teague's

association with IAFF Local 4820, the labor organization comprised of fire fighters employed by ESD 8" because he "regularly participated in the activities of the labor organization and acted as a spokesperson for IAFF Local 4820 and its members on matters of public interest and concern, including wasteful spending by ESD 8, fire fighter compensation, lack of PPE, and other issues concerning fire fighter safety." *Id.* ¶ 58.

For the same reasons discussed above as to Teague's free speech/petition claims, the Court finds that Teague sufficiently alleges a plausible *prima facie* freedom of association retaliation claim. *See Boddie*, 989 F.2d at 751 (finding that a reasonable jury could conclude that union association was a substantial or motivating factor in fire fighter's discharge where evidence showed fire chief had anti-union bias).

### 3. *Mt. Healthy* Defense

In the alternative, ESD 8 argues that even if Teague has alleged a *prima facie* case of First Amendment retaliation, his claim should be dismissed because he has not shown that ESD 8's proffered reason for terminating him (failing to disclose his prior employment with the Austin Fire Department) was pretextual. Dkt. 13 at 7. ESD 8 tries to rely on an affirmative defense established in *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). Under the "*Mt. Healthy* defense," once a plaintiff has met his burden of showing that his protected speech was a substantial or motivating factor in the defendant's adverse employment decision, a defendant may avoid liability by showing by a preponderance of the evidence, that it would have taken the same adverse employment action even in the absence of the protected speech. *Haverda v. Hays Cnty.*, 723 F.3d 586, 591-92 (5th Cir. 2013) (citing *Mt. Healthy*, 429 U.S. at 287). An employee can refute that showing by presenting evidence that his employer's explanation for the discharge is merely pretextual. *Id.* (quoting *Coughlin v. Lee*, 946 F.2d 1152, 1157 (5th Cir. 1991)).

The *Mt. Healthy* affirmative defense is a factual determination for trial, not on a motion to dismiss. *See Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001) ("It is for a jury to resolve any remaining factual disputes as to whether plaintiff's protected speech was a substantial or motivating factor in the adverse employment decision, or whether the employer would have made the same employment decision in the absence of the protected speech."); *Gaines v. Jefferson Cnty. Sch. Dist.,* No. 5:22-CV-32-DCB, 2023 WL 8482893, at *7 n.4 (S.D. Miss. Dec. 7, 2023) (refusing to consider *Mt. Healthy* defense at motion to dismiss stage). The Court finds that the *Mt. Healthy* defense does not apply at this stage of the case.

### 4. *Monell* Liability

Finally, ESD 8 argues that Teague failed to plead sufficient facts to show that the alleged constitutional violations resulted from an "official policy or custom" of ESD 8, as required to show municipal/local government liability under 42 U.S.C. § 1983.

Section 1983 of the Civil Rights Act of 1964 provides a private cause of action against anyone who, "under color of any statute, ordinance, regulation, custom, or usage, of any State," violates another's constitutional rights. 42 U.S.C. § 1983. "A § 1983 suit may be brought against a person in his or her individual or official capacity as well as against governmental entities." *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 275 (5th Cir. 2015). To state a claim under § 1983, a plaintiff (1) "must allege the violation of a right secured by the Constitution and laws of the United States," and (2) "must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

In *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), the Supreme Court held that while municipalities and other local government units are "persons" that can be sued directly under § 1983, a local government unit "cannot be held liable *solely* because it employs a

tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. Because States are protected by the Eleventh Amendment while municipalities are not, the Supreme Court limited its holding in *Monell* "to local government units which are not considered part of the State for Eleventh Amendment purposes." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989) (quoting *Monell*, 436 U.S. at 690 n.54).

To state a claim under § 1983 against a local government unit like ESD 8, a plaintiff must allege sufficient facts to permit the reasonable inference that (1) an official policy or custom (2) promulgated by the local government unit's policymaker (3) was the moving force behind the violation of a constitutional right. *Robinson v. Hunt Cnty., Tex.,* 921 F.3d 440, 447 (5th Cir. 2019); *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 623 (5th Cir. 2018); *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009). The parties dispute whether Teague has alleged sufficient facts to meet these elements.

### a. Policy or Custom

To establish a policy or custom for purposes of *Monell* liability, a plaintiff can rely on (1) written policy statements, ordinances, or regulations; (2) a widespread practice that is so common and well-settled as to constitute custom that fairly represents municipal policy; or (3) a single decision by an official or entity possessing final policymaking authority for the specific act that forms the basis of the § 1983 claim. *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214-15 (5th Cir. 2019). Teague relies on the widespread practice and final policymaker theories of liability.

"A policymaker is an official whose decisions represent the official policy of the local governmental unit. In other words, an official who has the power to make official policy on a particular issue. When he speaks on it, his words represent the local government's official policy." *Arnone v. Cnty. of Dallas Cnty., Tex.*, 29 F.4th 262, 266 (5th Cir. 2022) (cleaned up). Whether a particular official has "final policymaking authority" is a question of state law. *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 786 (1997).

Teague argues that Wenzel, as Fire Chief of ESD 8 from 2016 through 2023, was a final policymaker for ESD 8. Dkt. 18 at 13. In support, he alleges that:

- "Wenzel was responsible for the management of ESD 8's day-to-day operations," which included "making decisions on hiring and firing personnel, promotions, suspensions, creating and enforcing workplace rules for ESD 8 employees, and anything else which might impact the terms and conditions of a fire fighter's employment with ESD 8," Dkt. 10 ¶¶ 10, 17;

- All ESD 8 fire fighters reported directly to Defendant Wenzel, *id.* ¶ 11; and

- "ESD 8 assigned Defendant Wenzel final policymaking authority pertaining to the creation and enforcement of nearly all rules and regulations which impacted the terms and conditions of employment for all ESD 8 employees," *id.* ¶ 42.

ESD 8 neither admits nor denies that Wenzel was responsible for its day-to-day operations or was a final policymaker for ESD 8 as to the events at issue. Dkt. 22 at 8. Instead, ESD 8 argues that Teague's allegations are conclusory and not specific enough to establish liability under *Monell*. *Id.*; Dkt. 13 at 11. But there has been no discovery and Teague has limited ability to plead the policies and practices of ESD 8. "The Fifth Circuit does 'not require a plaintiff to plead facts 'peculiarly within the knowledge of defendants.'" *Ybarra v. Davis*, 489 F. Supp. 3d 624, 633 (W.D. Tex. 2020) (quoting *Morgan v. Hubert*, 335 F. App'x 466, 472 (5th Cir. 2009)).

The Court finds Teague's allegations sufficient at the motion to dismiss stage to meet the final policymaker requirement. *See, e.g.*, *Boddie*, 989 F.2d at 751 (accepting plaintiff's theory that fire chief was the policymaker where plaintiff alleged fire chief had the authority to make official

policy decisions for the city on the hiring and firing of firemen); *Nichols v. City of Jackson*, 848 F. Supp. 718, 726 (S.D. Miss. 1994) (finding that plaintiff's suspension "was made by an official policymaker, the fire chief").

Teague also alleges that there is "a widespread pattern and practice of behavior by Defendants in which past members of IAFF Local 4820 who have spoken up about matters of public concern have been targeted, harassed, and driven from their jobs by Defendants." Dkt. 10 ¶ 6. Teague also alleges that termination of his employment "represents a widespread pattern and practice of behavior by ESD 8, in which ESD 8 fails to treat members of IAFF Local 4820 in the same manner as non-union employees." *Id.* ¶ 38. For example, he alleges:

> A former Local President was subjected to screaming, threats, and disciplinary action by ESD 8 whenever they spoke up about matters of public concern. That Local President was later accused of insubordination and fired over allegations for which a non-union member would have received lesser and/or no discipline.

> Another union member was subjected to daily harassment after he raised safety concerns about a specific piece of equipment. In response, members of the ESD 8 subjected that union member to taunts and threats on a near-daily basis. That union member developed post-traumatic stress disorder because of the coordinated harassment by ESD 8, and he was forced to resign his employment.

> As further proof of ESD 8's coordinated effort to punish and remove union members who spoke up about matters of public concern, Fire Chief Wenzel had a "Wall of Shame" in his office with the nameplates of union members he targeted, harassed, and removed from ESD 8.

> It is believed that at least 6 members of IAFF Local 4820 were targeted, harassed, and driven from their job in the two years preceding Teague's discharge because they spoke up about matters of public concern.

*Id.* ¶¶ 38-40. The Court finds Teague's allegations sufficient to allege "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Webb*, 925 F.3d at 215.

### b.   Prongs Two and Three

Teague's allegations satisfy prong two of *Monell* liability because he pleads that Defendants were aware of and promulgated the policy against free speech. *Id.* ¶¶ 38-40; 47-50, 58-60. The pleadings also satisfy the third prong of *Monell* because Teague alleges that the policy led to his termination. *Id.* ¶¶ 38, 48-50. *See Colle v. Brazos Cnty.*, 981 F.2d 237, 246 (5th Cir. 1993) ("While the facts pleaded by [plaintiff] could support an inference that unconstitutional county policies were the 'moving force' behind [the constitutional violation], the facts as presently pleaded only set the stage for further discovery."); *Ybarra*, 489 F. Supp. 3d at 633-34 (finding that plaintiff met second and third prongs of *Monell* liability where he pled that the policy was known by the policy maker and defendant was involved in the constitutional violation).

For these reasons, the Court finds that Teague's Amended Complaint contains sufficient factual matter to state a claim to relief that is plausible on its face. It is plausible that Teague can succeed on all the elements of a First Amendment free speech, association, and petition claim. His Amended Complaint withstands ESD 8's Motion to Dismiss. *Iqbal*, 556 U.S. at 678.

### IV.   Wenzel's Motion to Dismiss

Teague asserts the same First Amendment retaliation claims against Wenzel as against ESD 8, as well as a right to freedom of association claim under the Texas Labor Code. Wenzel argues that Teague's claims should be dismissed under Rules 12(b)(1) and 12(b)(6) based on governmental immunity, qualified immunity, redundancy, and failure to state a plausible claim for relief.

Rule 12(b)(1) allows a party to move to dismiss a claim for lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction, and, at the pleading stage, the plaintiff's burden is to allege a plausible set of facts establishing jurisdiction." *Haverkamp v. Linthicum*, 6 F.4th 662, 668 (5th Cir. 2021)

(cleaned up). "On a motion to dismiss for lack of jurisdiction, all well-pleaded facts are taken as true and all reasonable inferences must be made in the plaintiff's favor." *Id.* at 668-69. "A court's dismissal of a case resulting from a lack of subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction. Accordingly, such a dismissal should be made without prejudice." *Mitchell v. Bailey*, 982 F.3d 937, 944 (5th Cir. 2020) (cleaned up).

## A. Section 1983 Official Capacity Claims

Wenzel argues that Teague's First Amendment claims against him in his official capacity should be dismissed because they are duplicative of his claims against ESD 8. Suits against officials in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell*, 436 U.S. at 690 n. 55). Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." *Id.* The official-capacity claims and the claims against the governmental entity "essentially merge." *Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000). It is proper to dismiss claims against local governmental officers in their official capacities when the allegations duplicate claims against the governmental entities. *See Garza*, 972 F.3d at 734 (affirming dismissal of official capacity claims against district attorney as duplicative of claims against county); *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (official capacity claims against city employee properly dismissed where "allegations duplicate claims against the respective governmental entities themselves").

Because Teague's First Amendment retaliation claims against Wenzel in his official capacity are duplicative of his claims against ESD 8, the Court recommends that they should be dismissed.

**B.  Section 1983 Individual Capacity Claims**

Wenzel also argues that Teague's First Amendment retaliation claims against him in his individual capacity should be dismissed because (1) he is entitled to qualified immunity, and (2) Teague does not state a plausible claim for relief.

### 1.  Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Once a defendant raises a qualified immunity defense, the burden shifts to the plaintiff to plead specific facts that (1) the defendant "violated a statutory or constitutional right," and (2) the right was "clearly established" at the time of the challenged conduct. *Terwilliger v. Reyna*, 4 F.4th 270, 284 (5th Cir. 2021). "The officer is entitled to qualified immunity if there is no violation, or if the conduct did not violate law clearly established at the time." *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019).

A clearly established right is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citation omitted). The right may be clearly established by Supreme Court of Fifth Circuit precedent. *Bailey v. Iles*, 87 F.4th 275, 282 (5th Cir. 2023).

> The key purpose is to create "fair warning," thus the "clearly established" prong can be satisfied "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights."

*Terwilliger*, 4 F.4th at 284 (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

Like ESD 8, Wenzel argues that Teague fails to allege specific facts to support his First Amendment claims. For the same reasons, the Court finds that Teague has alleged plausible First Amendment free speech, freedom of association, and right to petition claims against Wenzel in his individual capacity.

The Court also finds that these rights were clearly established when Teague was terminated on March 20, 2023. *See Anderson*, 845 F.3d at 600 ("By at least 2014, it was clearly established that an employee's speech made 'externally' concerning 'an event that was not within [his or her] job requirements' was entitled to First Amendment protection."); *Boddie*, 989 F.2d at 748 ("We are persuaded that in 1987 it was clear that the First Amendment protects an employee's right to associate with a union."); *Click v. Copeland*, 970 F.2d 106, 111 (5th Cir. 1992) ("The law was established clearly enough in this circuit in January 1988 that a reasonable officer should have known that if he retaliated against an employee for exercising his First Amendment rights, he could not escape liability by demoting and transferring the employee rather than discharging him.").

The Court finds that Teague has alleged sufficient facts to overcome Wenzel's qualified immunity defense.

### 2.  Request for a Rule 7(a) Reply

In the alternative, Wenzel asks the Court to order Teague "to file a Rule 7(a) Reply addressing qualified immunity." Dkt. 11 at 5. Wenzel argues that Teague alleges insufficient factual material specific enough to overcome his qualified immunity defense.

"Within the Fifth Circuit, a Rule 7(a) reply is sometimes used to allow a decision to be made on the qualified immunity question when the complaint does not allege sufficient factual material to overcome the defense on its own." *Parsons v. Marmarinos*, No. 1:14-CV-01122-LY, 2015 WL 5098807, at *6 (W.D. Tex. Aug. 31, 2015); *see also Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) ("When a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or on its own, require the plaintiff to reply to that defense in detail."). But a Rule 7(a) reply is appropriate only when

> the plaintiff has alleged sufficient factual material to make out a constitutional violation and the district court is still unable to rule on the qualified immunity question. A district court "may, in its discretion, insist that a plaintiff file a reply," but it is unnecessary for the court to do so when the plaintiff has met his pleading burden.

*Parsons*, 2015 WL 5098807, at *6 (citation omitted).

Teague has met his pleading burden. He has alleged sufficient factual material to raise the possibility that Wenzel is not entitled to the qualified immunity defense at the motion to dismiss stage, obviating the need for a Rule 7(a) reply. The Court recommends that Wenzel's request for a Rule 7(a) reply should be denied.

## C.  Texas Labor Code Claim

Teague cites several provision of the Texas Labor Code ("TLC") in his claim under that statute. TLC § 101.001 provides: "All persons engaged in any kind of labor may associate and form trade unions and other organizations to protect themselves in their personal labor in their respective employment." Section 101.052 states: "A person may not be denied employment based on membership or nonmembership in a labor union."[2] And § 101.301 states:

---

[2] Texas Government Code § 617.004 states that "[a]n individual may not be denied public employment because of the individual's membership or nonmembership in a labor organization."

> (a) The right of a person to work may not be denied or abridged because of membership or nonmembership in a labor union or other labor organization.
>
> (b) In the exercise of the right to work, each person shall be free from threats, force, intimidation, or coercion.
>
> (c) A person who violates this subchapter is liable to a person who suffers from that violation for all resulting damages.

"By its plain terms, the statute makes it lawful for employees to form labor unions or other organizations, and specifically, those organizations created to protect them in their employment." *City of Round Rock v. Rodriguez*, 399 S.W.3d 130, 133-34 (Tex. 2013).

Teague alleges that Wenzel violated his rights "to freely associate with other ESD 8 employees and/or a labor association of other ESD 8 employees" protected by TLC §§ 101.001, 101.052, and 101.301. Wenzel argues under Rule 12(b)(1) that the Court lacks subject matter jurisdiction over Teague's TLC claims under the doctrine of sovereign immunity. In the alternative, he argues that this claim should be dismissed for failure to state a plausible claim for relief under Rule 12(b)(6).

### 1.  Governmental Immunity

"Sovereign immunity, or governmental immunity as it is called in relation to subdivisions of the State such as cities, defeats a trial court's subject matter jurisdiction unless the immunity has been waived." *City of Houston v. Houston Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 575 (Tex. 2018). While governmental immunity also generally bars suits for monetary damages against public officials, it "does not bar prospective [injunctive] relief against government officers acting *ultra vires*, *i.e.*, outside their legal authority." *Jones v. Turner*, 646 S.W.3d 319, 325 (Tex. 2022).

> A state official's illegal or unauthorized actions are not acts of the State. Accordingly, an action to determine or protect a private party's rights against a state official who has acted without legal or statutory authority is not a suit against the State that sovereign immunity bars. In other words, we distinguish suits to determine a party's rights against the State from suits seeking damages. A party can maintain a suit to determine its rights without legislative permission.

*City of El Paso v. Heinrich*, 284 S.W.3d 366, 370 (Tex. 2009) (citation omitted).

Because ESD 8 is a political subdivision of the State of Texas, governmental immunity bars Teague's TLC claims unless the Texas Legislature has waived ESD 8's immunity or the *ultra vires* exception applies. Teague relies on the *ultra vires* exception.

A plaintiff bringing an *ultra vires* claim must "allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Heinrich*, 284 S.W.3d at 372. An official acts without legal authority when he "exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 349 (Tex. 2019) (quoting *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016)). Governmental immunity does not bar a suit to bring government officials into compliance with statutory or constitutional provisions. *Id.* at 348.

Wenzel argues that Teague's allegations do not show that he "engaged in *ultra vires* conduct" because they focus "on the alleged speech, not the association with the union." Dkt. 21 at 4. Wenzel contends that in his Amended Complaint, Teague alleges only that he "'discriminated against, disciplined, and discharged Teague *for continually advocating about issues* which impacted fire fighters of ESD 8 and the Pedernales community,' not for his association with the union.'" Dkt. 11 at 14 (quoting Dkt. 10 ¶ 81). Wenzel argues that Teague fails to plead sufficient facts to show that he violated the TLC by interfering with Teague's right to associate with IAFF Local 4820.

But Wenzel overlooks the rest of the allegations in the Amended Complaint. Teague also alleges that he (1) "was a member of IAFF Local 4820" and "regularly participated in the activities of the labor organization and acted as a spokesperson for IAFF Local 4820 and its members on matters of public interest and concern," Dkt. 10 ¶ 78; (2) "Wenzel was aware of Teague's association with IAFF Local 4820," *id.* ¶ 80; (3) Wenzel disciplined, harassed, and/or retaliated "against ESD 8 fire fighters due to their status as members of IAFF Local 4820," *id.* ¶ 43; (4) it

violates the TLC for Wenzel "to discriminate against, discipline, or discharge its employees for exercising their rights to free association," *id.* ¶ 77; and (5) "Wenzel's conduct unlawfully chills the free association with IAFF Local 4820, among other organizations, and intimidates other ESD 8 employees and members of the Pedernales community from similarly associating with or actively participating in IAFF Local 4820," *id.* ¶ 82.

Teague's allegations state a plausible *ultra vires* claim that Wenzel violated his rights under the TLC by retaliating against him for exercising his right to associate with IAFF Local 4820 and therefore acted "without legal authority." *See Garcia v. City of Austin, Tex.*, No. 1:17-CV-1052-ML, 2019 WL 2572539, at *8 (W.D. Tex. Mar. 14, 2019) (finding that fire fighter plaintiff stated *ultra vires* claim under TLC against fire chief where he "alleged that his state-law right to freely associate with labor unions was violated by [fire chief] when she ultimately disqualified him from employment with the City in retaliation for speaking out in his union-leadership role on matters of public concern."); *Harper v. Travis Cnty. Emergency Servs. Dist. 5*, No. 1-17-CV-01174-AWA, 2019 WL 96310, at *3 (W.D. Tex. Jan. 3, 2019) (alleging that fire chief "acted without legal authority when he took steps to terminate [plaintiff] based on his membership in a labor union"); *Dorris v. City of McKinney, Tex.*, 214 F. Supp. 3d 552, 559 (E.D. Tex. 2016) (alleging wrongful discharge for engaging in free speech and exercising right to freedom of association with union).

## 2.  Failure to State a Claim

Wenzel also argues that Teague's TLC claim should also be dismissed because "there is no private right of action" under TLC §§ 101.001 and 101.052, and § 101.301 "does not apply to public sector unions." Dkt. 11 at 16. In support of his argument that § 101.001 does not provide for a private right of action, Wenzel cites one case: *Simonelli v. Fitzgerald*, No. Civ. A. SA-07-CA-360, 2009 WL 3806489, at *1 (W.D. Tex. Oct. 22, 2009). In *Simonelli*, the plaintiff asserted

two TLC claims under §§ 101.001 and 101.301. *Id.* at 2. The defendants moved to dismiss, arguing that neither created a private right of action. The district court agreed that plaintiff's claim for damages under § 101.001 should be dismissed because that section "reads more like a policy statement. No remedies are provided for any violation and no provisions are set forth as to who may bring suit." *Id.* But the court rejected the argument that § 101.301 did not create a private right of action, as that provision states that "[a] person who violates this subchapter is liable to a person who suffers from that violation for all resulting damages." TLC § 101.301(c). The court also stated that a plaintiff may be able to pursue claims for injunctive relief under § 101.001. *Id.*

Wenzel's reliance on *Simonelli* is misplaced because Teague does not pursue a separate claim under § 101.001. He invokes § 101.301 to assert one "right to freedom of association" claim "pursuant to the Texas Labor Code" against Wenzel. Dkt. 10 at 15. While Teague alleges that his "union activities are protected by the right to freely associate with a labor organization under §[] 101.001," it does not appear that he asserts a separate claim under that section. *Id.* ¶ 78.[3] And even if he were, it is not clear that such a claim would be precluded because this Court has specifically rejected the argument that § 101.001 does not provide a private right of action. *Garcia,* 2019 WL 2572539, at *9; *see also Harper*, 2019 WL 96310, at *3 (permitting fire fighter plaintiff to pursue claims under §§ 101.001 and 101.052); *Dorris*, 214 F. Supp. 3d at 559 (same). In addition, the Texas Supreme Court has stated that § 101.001 "confers . . . the right to organize into a trade union or other organization" and "makes it lawful for employees to form labor unions or other organizations, and specifically, those organizations created to protect them in their employment." *City of Round Rock*, 399 S.W.3d at 133-34.

---

[3] Similarly, while Teague mentions § 617.004 of the Texas Government Code in his Amended Complaint, he does not allege a separate claim under the Texas Government Code against Wenzel. Dkt. 10 at 15.

Wenzel next argues that Teague's TLC claim should be dismissed because "Texas Labor Code § 101.301 does not apply to public sector unions." Dkt. 11 at 16. He cites *City of Round Rock*, 399 S.W.3d 130, without other argument. But the Texas Supreme Court never stated in that case that § 101.301 does not apply to public sector employees or unions; in fact, § 101.301 was not at issue. The court addressed "whether section 101.001 of the Texas Labor Code grants unionized public-sector employees in Texas the right to, upon request, have union representation during an internal investigatory interview when the employee reasonably believes the interview may result in disciplinary action." *Id.* at 132. The *City of Round Rock* holding is limited to the specific issue of union representation during a disciplinary interview and does not apply here.

Courts have routinely allowed public sector employees to pursue similar right to association claims under § 101.301. *See United Steel, Paper & Forestry, Rubber Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Anderson*, 9 F.4th 328, 334 (5th Cir. 2021) (noting that § 101.301 "authorizes a damages action against an employer for violating a person's right to work, including his right to be 'free from threats, force, intimidation, or coercion'" in a suit brought by a county probation officer); *Harper*, 2019 WL 96310, at *3 (permitting fire fighter to pursue claims under §§ 101.001, 101.052 and 101.301 of the TLC); *Garcia,* 2019 WL 2572539, at *9 (same). Wenzel has not met his burden to show Teague fails to state a plausible claim under the Texas Labor Code.

## V.    Recommendation

This Magistrate Judge **RECOMMENDS** that the District Court **GRANT IN PART AND DENY IN PART** Defendant Troy Wenzel's Motion to Dismiss, or in the Alternative, Motion for Rule 7(a) Reply (Dkt. 11). The Court recommends that the District Court **DISMISS** Teague's Section 1983 First Amendment claims against Troy Wenzel in his official capacity and **DENY** the Motion on all other grounds.

The Court **FURTHER RECOMMENDS** that the District Court **DENY** Travis County Emergency District 8's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 13).

**IT IS ORDERED** that the Clerk remove this case from this Magistrate Judge's docket and return it to the docket of the Honorable District Court.

## VI.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on May 3, 2024.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE